FILED
2026 Sep-11 PM 02:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | | |
|---|---|---|
| ROBERT BRIAN MATTHEWS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.: 4:25-cv-687-JHE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**[1]

Plaintiff Robert Brian Matthews ("Matthews") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his applications for supplemental security income ("SSI") and a period of disability and disability insurance benefits ("DIB"). Matthews timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED**, and this action is **REMANDED** for further proceedings.

**I. Factual and Procedural History**

On October 24, 2019, Matthews filed applications for SSI and DIB, alleging disability beginning September 22, 2018. (Tr. 261–67). The Commissioner initially denied Matthews'

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 2).

claims on February 20, 2020, and denied them again upon reconsideration on October 19, 2020. (Tr. 98–99, 164–65). Matthews requested a hearing on December 11, 2020. Prior to the scheduled hearing, Matthews amended his alleged onset date to September 27, 2018. (Tr. 285). The ALJ held a telephone hearing on August 17, 2021, and, following the hearing, issued an unfavorable decision on September 9, 2021. (Tr. 21–42). Matthews requested review by the Appeals Council. (Tr. 259–60). On February 18, 2022, the Appeals Council issued an order finding no reason to change the ALJ's decision. (Tr. 1–6).

Matthews filed a complaint in this district on March 9, 2022, appealing the Commissioner's decision. (Tr. 707–08).[2] While that federal appeal was pending, Mathews protectively filed another claim for DIB and SSI on March 17, 2022. (Tr. 615, 863–73). The Commissioner ultimately did not oppose remand, and on February 24, 2023, the court remanded to the case to the Commissioner for further action consistent with the court's decision. (Tr. 726–27).

On remand, the Appeals Council consolidated Matthews' new claim with the remanded claim. (Tr. 736). Based on the court's order, the Appeals Council vacated the ALJ's decision and remanded the consolidated claims back to the ALJ to further evaluate medical opinions and Matthews' maximum residual functional capacity. (Tr. 733–39). The ALJ held a second telephone hearing on January 18, 2024 (Tr. 656–78). On March 27, 2024, the ALJ issued another decision finding that Matthews was not disabled. (Tr. 613–46). Matthews again sought review before the Appeals Council (tr. 823–62), but it declined to assume jurisdiction over the appeal on February

---

[2] *See also Matthews v. Social Security Administration, Commissioner*, Case No. 4:22-cv-00306-LSC (N.D. Ala.).

28, 2025. (Tr. 608–09). On that date, the ALJ's decision became the final decision of the Commissioner. Matthews initiated this action on May 5, 2025. (Doc. 1).

Matthews was 46 years old on his alleged disability onset date. (Tr. 261, 644). He has a high school education and past relevant work as an electrician. (Tr. 297, 644).

## II. Standard of Review[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. It is "more than a scintilla, but less than a preponderance." *Id*.

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal

[3] In general, the legal standards applied are the same whether a claimant seeks SSI or DIB. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505 (a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520 (a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is engaged in substantial gainful activity

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the Social Security Administration ("SSA");

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

*Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1312 (11th Cir. 2021). If a claimant satisfies Steps One and Two, he or she is automatically found disabled if he or she suffers from a listed impairment. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). "Once a claimant proves that she can no longer perform her past relevant work, the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Id.* (cleaned up).

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the five-step evaluation process, the ALJ made the following findings:

At Step One, the ALJ found that Matthews had not engaged in substantial gainful activity since his alleged onset date. (Tr. 619). At Step Two, the ALJ found that Matthews has the following severe impairments: generalized anxiety disorder, panic disorder, and major depressive disorder. (Tr. 619–26). At Step Three, the ALJ found that Matthews does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 626–33).

Before proceeding to Step Four, the ALJ determined Matthews' residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Matthews has the RFC

> to perform a full range of work at all exertional levels but with the following non-exertional limitations: he would be able to understand, remember, and carry out simple instructions and tasks, he can tolerate changes in the workplace that are infrequent and gradually introduced, he can have occasional work-related interaction with supervisors and co-workers and no interaction with the general public.

(Tr. 633).

At Step Four, the ALJ found, relying in part on hearing testimony from a vocational expert, that Matthews is unable to perform his past relevant work. (Tr. 644). At Step Five, the ALJ found that, considering Matthews' age, education, work experience, and RFC, Matthews is able to perform jobs that exist in significant numbers in the national economy. (Tr. 645). Therefore, the ALJ determined Matthews has not been under a disability from September 27, 2018 through the date of the decision. (Tr. 646). Thus, the ALJ denied Matthews' claim. (Tr. 646).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Matthews challenges the Commissioner's decision on three grounds: (1) the ALJ failed to properly evaluate all medical opinions presented as required by 20 C.F.R. §§ 404.1520c and 416.920c (doc. 14 at 17–23); (2) the ALJ failed to adequately develop the record (*id.* at 24–25); and (3) the ALJ failed to properly address Matthews' poverty good cause for lack of treatment and failed to consider good cause for Matthews' failure to attend two missed consultative examinations (*id.* at 25–32). The last of these was only erroneous in part, but that error requires remand. Because the ALJ will necessarily have to reevaluate opinion evidence in light of this error, the undersigned does not reach the other issues Matthews raises.

### A. The ALJ Adequately Assessed Matthews' Poverty and Mental Impairment Claims

Matthews asserts he is indigent and had "bouts of homelessness during the claims period" and thus the ALJ should have considered Matthews' poverty when evaluating his claims. (Doc. 17 at 26). Additionally, Matthews argues that his mental impairments affect his ability to understand the seriousness of his conditions and the need for treatment, and this should have been treated as good cause for failure to seek additional treatment by the ALJ. (*Id.* at 30–31).

The Eleventh Circuit has consistently recognized that a claimant's inability to afford treatment may constitute good cause for noncompliance. In *Dawkins v. Bowen*, the court stated that "poverty excuses noncompliance[.]" 848 F.2d 1211, 1213 (11th Cir. 1988). It expanded on this doctrine in *Henry v. Comm'r of Soc. Sec.*, holding that remand is required where an ALJ "primarily if not exclusively" relies on a claimant's failure to seek treatment without addressing any good-cause explanation for that failure. 802 F.3d 1264, 1268 (11th Cir. 2015). In doing so, the court emphasized that ALJs must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts," including a claimant's ability to obtain medical care. *Id.* at 1269 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981))

Nevertheless, courts in the Eleventh Circuit have also recognized limits on the poverty excuse. In *Hunt v. Colvin*, for example, a court found no reversible error where the ALJ considered the claimant's financial limitations but also noted the claimant's failure to pursue available low-cost or free treatment options. No. 16–0021-M, 2016 WL 4523900 at *4 (S.D. Ala. Aug. 29, 2016). The court took issue with such failures by the claimant to seek alternative means of medical care, concluding that the ALJ was correct in considering the claimant's poverty in light of the claimant's failure to follow through with the less expensive or free treatment options. *Id.*; *see also*

*Burger v. Colvin*, No. 1:13-cv-127-CSC, 2014 WL 4495220 at *10 (M.D. Ala. Sept. 12, 2014) ("[A] claim of financial inability to obtain prescribed treatment is only a justifiable cause for failure to follow the prescribed treatment when free community resources are unavailable.").

Here, the ALJ assessed, but largely rejected, Matthews' poverty-based rationale for not seeking treatment:

> The claimant also stated that he is unable to afford treatment and/or care due to no finances or insurance. However, he was able to explain subsidized clinic services, including sliding scale for medications, suggesting that he was knowledge [sic] of the existence of these services. I further note that he was in a relationship with someone that was able to help him apply, be approved, and receive food stamps suggesting that he would be able to seek other services to manage his impairments. The claimant also stated that he spends $4.80 on cigarettes [per week], which is similar to what he reported at Quality of Life Health Services when he was instructed to save that money and use it for his medications.

(Tr. 638). The ALJ also stated:

> [T]he evidence reveals the claimant did not exhaust all efforts to seek treatment, with no visits to free or subsidized clinics evidenced, and personal denial of emergency room visits or hospitalizations.
>
> [ . . . ]
>
> [T]he claimant has diagnoses and has been treated with medications for asthma, COPD, and hypertension. However, he has not complied with his medication regimen alleging inability to afford them, but has not sought alternate methods to acquire medications such as charity work or other subsidized clinic services. I also note that he was instructed by Quality of Life to save his money from cigarettes for his medications. Even so, there is no evidence of the claimant seeking emergency care for disabling symptoms or complications of hypertension, COPD, or asthma.

(Tr. 623).

Matthews argues that the ALJ erred in considering his poverty because he is "a chronically homeless, unemployed, uninsured individual" who "got what care he could through April 2023." (Doc. 14 at 28). Matthews contends that the ALJ did not account for the fact that he lives nine miles from Quality of Life, meaning that it would be unreasonable for him to walk there if his

vehicle (a 1989 pickup truck) was not running. (*Id.*). However, it does not follow from this that the ALJ inappropriately assessed his poverty; as discussed above, the principle that poverty excuses noncompliance only applies when a claimant demonstrates he is unable to obtain treatment and that no reasonable alternatives were available. *See Dawkins*, 848 F.2d at 1213. The record reflects that Matthews had access to low-cost or free medical care through providers such as Quality of Life Health Services, where he received treatment. (Tr. 447–52, 527–28). Despite this access to care, Matthews did not consistently follow up on his treatment or his providers' recommendations. The ALJ was entitled to take this into account to conclude that Matthews' lack of treatment was due to his own actions, not just his financial constraints.[5]

Additionally, Matthews points to SSR 18-3p, arguing that the ALJ applied the wrong standard to assess his lack of treatment. (Doc. 14 at 29). That ruling states that before denying benefits for failure to follow prescribed treatment, the Commissioner must find all of the following: (1) "The individual would otherwise be entitled to benefits based on disability or eligible for blindness benefits under titles II or XVI of the Act"; (2) "We have evidence that an individual's own medical source(s) prescribed treatment for the medically determinable impairment(s) upon which the disability finding is based"; and (3) "We have evidence that the individual did not follow the prescribed treatment." SSR 18-3p, 2018 WL 4694327, at *49617. However, the ALJ did not use Matthews' failure to follow treatment as a basis for denying benefits because she did not find

---

[5] Matthews takes issue with the ALJ's conclusion that his smoking habit also impaired his ability to afford medications. (Doc. 14 at 30). Although Matthews adds up the annual amount that he spends on cigarettes based on his claim of smoking a pack a week at $4.80 and argues that they would not realistically have helped him afford medication (*id.*), the ALJ specifically noted a progress note from Quality of Life directing Matthews to stop smoking and to "save the 5 $ for the cigarettes to pay for his blood pressure medication." (Tr. 617) (citing tr. 1053). Matthews cannot reasonably fault the ALJ for echoing the advice of his healthcare providers.

that Matthews was disabled and entitled to benefits. Rather, the ALJ concluded that Matthews' subjective claims of limitations were undermined because he failed to seek treatment for them. This is specifically permitted by SSR 16-3p:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints

SSR 16-3P, 2016 WL 1119029, at *8. The ALJ did not err by exploring inconsistencies between Matthews' testimony and his history of treatment.

Additionally, Matthews' briefly argues that his mental impairments prevented him from seeking treatment. (Doc. 14 at 30–31). This is not supported by the record. Matthews' evidence for this is an excerpt from his hearing testimony where he states that he is afraid of medication side effects. (*Id.*) (citing tr. 663). Although it is clear that Matthews *said* this, there is no basis to conclude that Matthews' concerns about side effects were based on a mental impairment rather than (for example) ordinary judgment. While Matthews was diagnosed with generalized anxiety disorder, panic disorder, and major depressive disorder, the medical evidence demonstrates that he retained normal thought processes and the ability to engage with others during examinations. (Tr. 639). There is no indication that his mental impairments rendered him incapable of understanding the need for medical treatment or pursuing available resources.

The ALJ acknowledged Matthews' circumstances and evaluated them in the context of the record as a whole. The ALJ's conclusion that Matthews' poverty did not establish good cause for

failing to seek additional treatment is supported by evidence in the record. Thus, the ALJ did not err in evaluating how Matthews' poverty and mental impairments affected his ability to seek treatment.

### B. The ALJ Erred by Failing to Consider Whether Matthews Had a Good Reason for Missing Scheduled Medical Examinations

Matthews also contends that the ALJ erroneously based portions of her decision on his failure to attend scheduled consultative examinations. (Doc. 14 at 31–32).

Under the governing regulations, an ALJ may determine from a claimant's refusal or failure to take part in a consultative examination that the claimant is not disabled. 20 C.F.R. § 416.918(a). However, before doing so, the ALJ must consider whether the claimant had a "good reason" to miss the consultative examination. *Id*. Nonexclusively, the regulations list as examples of such good reasons illness, not receiving timely notice, receiving incomplete or incorrect information, or a death or serious illness in the claimant's family. 20 C.F.R. § 416.918(b)(1)-(4). Administrative guidance reinforces this requirement, stating that when a claimant fails to attend a consultative examination, the ALJ must apply the regulatory good cause standards and consider any limitations that may have contributed to the failure to appear. *Claimant Does Not Attend or Refuses to Undergo a Consultative Examination or a Test*, HA 01250.24. (formerly HALLEX § 1-2-5-24). The agency's Program Operation Manual System also require the Disability Determination Service to "make a reasonable effort to involve a third party prior to discontinuing attempts to develop evidence (including a CE) that requires the claimant's cooperation" for claims that require special handling (such as cases with a homeless claimant). POMS DI 22510.016(D)(1)(b), DI 23007.001(A).

Here, Matthews was scheduled to attend two consultative examinations. The first of these was on July 18, 2022, for back x-rays. (Tr. 714). A notation in the record indicates: "Clmt was scheduled to attend CE/E01 w/back XR 07/18/22. clmt was a No Show. phone attempt was placed to determine why clmt did not attend CE, no answer vm was left. call in letter/close out letter was sent 07/18/22 still no phone call from clmt to explain missing the CE". (Tr. 714–15). The second was a psychological examination on August 25, 2022. (Tr. 1096). The record of this cancelled examination contains the note "Videoconference instructions were texted to the patient at phone # [XXX-XXX]-0509[6] but came back as undelivered. No alternative number or email was available. The patient did not attempt to contact the provider." (*Id.*).

The ALJ mentioned Matthews' failure to attend the consultative examinations multiple times in her decision. For example, in response to Matthews' request that the ALJ develop the record further by ordering a breathing rest and nerve conduction study (tr. 987), the ALJ found that (among other reasons), further consultative examinations were unwarranted because "the claimant failed to cooperate with previously scheduled consultative examination [sic], including for back x-rays . . . . The claimant's failure or refusal to take part in a consultative examination without a good reason is a basis for finding the claimant is not disabled . . . ." (Tr. 617). The ALJ also found that Matthews "failed to cooperate and attend" the psychological consultative examination; thus, she concluded that "the record is silent" on Matthews' claims of borderline intellectual functioning and specific learning disorder and that she was under no duty to develop the record further. (Tr. 625). The ALJ also approvingly cited Dr. Reddy (whom she found to be persuasive), observing that there was insufficient evidence in the record as to Matthews' physical

---

[6] The undersigned has anonymized this and other phone numbers discussed below.

ailments "due to failure to cooperate with attending scheduled consultative examinations for x-rays." (Tr. 639). The ALJ again stated that "[t]he claimant's failure or refusal to take part in a consultative examination without a good reason is a basis for finding the claimant is not disabled." (*Id.*). Finally, finding state agency psychological consultant Dr. Peter Sims persuasive, the ALJ approvingly cited Dr. Sims' finding that Matthews "failed to cooperate with attending the consultative examination." (*Id.*).

Despite the ALJ's obligation to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts," *Cowart*, 662 F.2d at 735, the ALJ made no effort to determine why Matthews missed these consultative examinations, much less whether Matthews' explanation provided good cause. Rather, the ALJ simply skipped to the portion of the regulation allowing her to consider Matthews' nonattendance as evidence of lack of disability. This is problematic here because the record does not support that the agency provided adequate notice to Matthews of the hearings or that the agency followed its own procedures when the consultative examiners were unable to contact Matthews. First, no evidence exists in the record of how the agency provided notice to Matthews, who (as discussed above) was homeless. Second, as Matthews points out, although it is unclear what number the July 2022 consultative examiner's office called, the 0509 number that the August 2022 psychological consultative examiner's office called does not appear to actually be the contact number Matthews had provided to the agency. (Doc. 14 at 14–15). Rather, in November 2021, Matthews had provided a phone number ending in 8835. (Tr. 740). Matthews also provided a third number (ending in 2500) in October 2022, several months after the missed consultative examinations. (Tr. 755). Although the agency continued to list the 0509 number as a contact number for Matthews even after Matthews provided the 2500 number in October 2022 (*see* tr. 960), the record does not reflect that it is a number where Matthews was

reachable in August 2022. Third, despite Matthews' homelessness, neither notation shows any effort by the respective examiner to contact a third party—for example, as Matthews suggests (doc. 14 at 32), his appointed representative or his aunt.

The cumulative effect of each of these facts is that it is unclear whether Matthews even knew that the consultative examinations were scheduled. Under 20 C.F.R. § 416.918(b)(2), the lack of notice to Matthews would have provided a good reason for Matthews' failure to attend the scheduled consultative examinations. Consequently, the ALJ would not have been permitted to use that failure to support a finding that Matthews was not disabled under 20 C.F.R. § 416.918(a). Further, the ALJ would not have been able to rely on the absence of evidence of physical ailments to make her determination.[7] And the ALJ would not have been able to point to Matthews' failure to attend previous consultative examinations as an appropriate reason to deny Matthews' request for further consultative examinations.

There is very little authority on the remedy when an ALJ erroneously determines whether a set of circumstances constitutes good cause under § 416.918. However, another court in this circuit has concluded that remand is appropriate. *Fordham v. Astrue*, No. CV 309–003, 2010 WL 2327633, (S.D. Ga. May 13, 2010), *report and recommendation adopted,* No. CV 309–003, 2010 WL 2327322 (S.D. Ga. June 8, 2010). In *Fordham*, the ALJ ordered a cardiac evaluation. *Id.* at *2. When the claimant received an "Internal Medicine General Medical Exam" notice, he attempted to confirm that the examiner was actually a cardiologist. *Id.* at *2–3. A representative for the ALJ rebuffed this inquiry. *Id.* at *3. The ALJ found that the claimant's proffered reason

---

[7] Arguably, the ALJ would also not have been able to rely on the opinions of Dr. Reddy and Dr. Sims to the extent that they were based on the absence of evidence.

"does not meet any of the reasons outlined . . . for failure to appear." *Id.* at *3. The ALJ then decided the case based on the record evidence. *Id.* The court found that "the ALJ did not even mention, let alone discuss in any detail, the situations that may constitute a good reason under the applicable regulations or how any of those situations applied to the circumstances of Plaintiff's case." *Id.* at *5. Because the ALJ failed to provide a "well-reasoned, well-articulated decision" analyzing the good reason standard, the court determined that it could not "second-guess what the ALJ may have been thinking or may have intended to consider when he found that Plaintiff had not established a good reason for failing to attend the consultative examination." *Id.*

The ALJ's error here was different than the error in *Fordham*. That said, its differences make it more problematic. Rather than offer an inadequate analysis of whether Matthews' reason for not attending the consultative examinations was a good one, the ALJ here did not attempt to determine the reason at all. Like the ALJ's decision in *Fordham*, the opacity of the ALJ's decision here does not allow for meaningful review by the court. Although *Fordham* is not binding, the undersigned finds it persuasively supports that the remedy is remand.[8] *See Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. 2010) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.").

On remand, the ALJ should determine the reason why Matthews missed the consultative examinations and whether that reason was a good one. To the extent that Matthews provides a good reason, consistent with one of the reasons listed in 20 C.F.R. § 416.918(b) or otherwise, and

[8] One other difference between *Fordham* and this case is that the Commissioner offered a post-hoc defense of the ALJ's actions. 2010 WL 2327633, at *5. Here, as Matthews points out (doc. 18 at 7), the Commissioner did not respond to Matthews' argument and thus did not offer any rationale for the ALJ's decision. (*See generally* doc. 17).

to the extent that the ALJ credits that reason, the ALJ should reassess the record. This includes reassessing the need for further consultative examinations, Matthews' testimony, and the opinion evidence.[9]

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Matthew's claim for SSI and a period of disability and DIB is **REVERSED**, and this action is **REMANDED** for further proceedings. A separate order will be entered.

---

[9] While the undersigned does not decide the issue, the ALJ should also consider whether to exhibit and assess the medical opinions of Drs. Gordon and Russell given: (1) the ALJ's obligation to articulate "how persuasive [the ALJ] find[s] *all* of the medical opinions," 20 C.F.R. § 404.1520c (emphasis added); (2) Dr. Sims, one of the reviewing physicians the ALJ found persuasive, appears to have reviewed Dr. Gordon's opinion. (*See, e.g.,* tr. 138, 716–17); and (3) the absence of evidence in the record related to Matthews' physical limitations.

Additionally, the ALJ refused to consider a portion of the December 2021 opinion of psychological examiner Dr. June Nichols because, while recounting symptoms during a psychological evaluation of Matthews, Dr. Nichols stated that "Mr. Minton" reported these symptoms. (Tr. 627). Regarding this, the ALJ stated "the claimant's last name is Matthews and it is unknown who Mr. Minton is, as such these symptoms listed are not considered." (*Id.*). It was unreasonable—and unfair to Matthews—for the ALJ to reject Dr. Nichols' assessment out of hand rather than following up with Dr. Nichols to determine whether Dr. Nichols had made a typographical error. This was the obvious explanation for the reference to "Mr. Minton," which was borne out by Dr. Nichols listing the same symptoms and attributing them to Matthews in a December 2023 report (tr. 1123) and later (albeit after the date of the ALJ's opinion) explicitly acknowledging that it was a typo (tr. 848) . The ALJ appears to have credited those symptoms in assessing the December 2023 report when she noted that Dr. Nichols "listed the same symptoms as listed for 'Mr. Minton'" (tr. 627), so her error may have been harmless. That said, it is puzzling why the ALJ would not have taken the "same symptoms as 'Mr. Minton'" listed in the December 2023 report as evidence that the reference to "Mr. Minton" in the December 2021 report was a typo and inferred that Dr. Nichols was describing Matthews' symptoms in both reports. The ALJ is reminded that "Social Security proceedings are inquisitorial rather than adversarial," *Sims v. Apfel*, 530 U.S. 103 (2000). As such, the ALJ should refrain on remand from this type of contentious analysis.

DONE this 11th day of September, 2026.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE